IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:15cr301 (JCC) |
| | ) | |
| MICHAEL HENDERSON, | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Michael Henderson's ("Defendant" or "Henderson") Combined Motion for New Trial Pursuant to Rule 33 and Motion for Acquittal Pursuant to Rule 29. [Dkt. 571.] Henderson's Second Motion for New Trial is also before the Court. [Dkt. 575.] For the following reasons, the Court will deny both of Defendant's motions.

**I. Standard of Review**

A. <u>Motion for Judgment of Acquittal</u>

Federal Rule of Criminal Procedure 29(c) provides, in relevant part, "if the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Where such a motion is based on "insufficiency of the evidence, the conviction must be sustained if the evidence, when viewed in the light most favorable to the Government, is sufficient for any rational trier of fact to find the essential elements of the crime

1

beyond a reasonable doubt." *United States v. Romer,* 148 F.3d 359, 364 (4th Cir. 1998).

When ruling on a Rule 29(c) motion, "the trial court should only consider the sufficiency of the evidence presented in that trial, not what evidence is likely to be admitted or excluded in a future trial." *United States v. Mackins,* 32 F.3d 134, 138-39 (4th Cir. 1994). The Government must be allowed "the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant,* 677 F.2d 1018, 1021 (4th Cir. 1982) (citations omitted). "Furthermore, neither the district court nor the appellate court should consider a witnesses' credibility, but must assume that the jury resolved all contradictions in favor of the Government." *Romer,* 148 F.3d at 364.

B.  <u>Motion for New Trial</u>

Federal Rule of Criminal Procedure 33 provides, in relevant part, that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The Fourth Circuit instructs that "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *United States v. Smith,* 451 F.3d 209, 216-17 (4th Cir. 2006) (citations omitted). Although while addressing a Rule 33 motion a district court "is

2

not constrained by the requirement that it view the evidence in the light most favorable to the government," such a motion should only be granted when "the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." *United States v. Arrington,* 757 F.2d 1484, 1485 (4th Cir. 1985).

## II. Analysis

A. <u>Motion for Judgment of Acquittal</u>

Defendant Henderson's omnibus motion, which consists of just six sentences, adopts Defendant Seko's motion for judgment of acquittal in its entirety. [Dkt. 571.] Seko's motion focuses almost exclusively on the sufficiency of the evidence used to convict her. [Dkt. 566 at 3-17.] As a result, the motion has little or nothing to say about the sufficiency of the evidence used to convict Henderson. While the Court recognizes that Henderson's motion fails to meet the "heavy burden" required under Rule 29(c) to set aside a unanimous jury verdict, *see United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007), it nevertheless proceeds to analyze the testimony and documentary evidence underlying his convictions.

In the instant case, the Court finds that there was ample evidence to convict Defendant Henderson of conspiracy and mail and wire fraud. For example, Joshua Johnson, Sabrina Rafo, and Nicholas Estilow all testified that Henderson was involved in the fraudulent scheme; in fact, Estilow described Henderson as one

3

of the scheme's best salespeople.  Two victims, Ronald D. and Auntrae B., also testified that Henderson personally scammed them. *See also* Gov't Exhs. 84-1 through 84-9.  In addition, Estilow testified that he observed Henderson disbursing the scheme's fraudulent proceeds to Araya, a point which Rafo later corroborated.  Rafo also testified that she observed Henderson opening bank accounts on behalf of the fraudulent scheme.  Her testimony was then confirmed by documentary evidence, which established that Henderson opened a number of bank accounts into and from which he deposited and withdrew victim funds, frequently in cash, *see, e.g.*, Gov't Exhs. 118-1, 118-2, 124-2 through 124-5, 125-1, 125-2, 125-4 through 125-6, 126-1 through 126-4, 128-1, 128-2, 128-4, 128-7, 128-11, 128-21, 129-1 through 129-3, 403-1, 403-2, 404-1, 404-2, 405-1, 405-2, 406-1, 406-3, 407-1, 407-2, 408-1, 409-1, as well as a number of retail mailboxes used to receive those funds, *see, e.g.*, Gov't Exhs. 45-1, 55-1, 57-2, 59-1, 87-3, 87-4.  Moreover, the documentary evidence showed that Henderson personally retrieved victim funds that were sent through MoneyGram, *see* Gov't Exhs. 114-1, 114-2, 114-3, 115-1, and went with Araya and Seko to open Permit 78 to continue sending mailings to potential victims in the fall of 2013, *see, e.g.*, Gov't Exh. 40-2.  Finally, an employee of Chase Bank testified that she spoke with Henderson, warning him that a victim complained about paying

4

money for services that were never rendered.  *See* Gov't Exh. 128-19.

Given the substantial weight of this evidence, and Rule 29(c)'s requirement to view that evidence in the light most favorable to the Government, the Court holds that a reasonable trier of fact could have found Defendant Henderson guilty beyond a reasonable doubt of conspiracy and mail and wire fraud. Accordingly, the Court denies Defendant's motion for a judgment of acquittal.

B.  <u>Motion for New Trial</u>

Defendant Henderson's omnibus motion also adopts Defendant Seko's motion for a new trial.  [Dkt. 571.]  Like her motion for a judgment of acquittal, however, Seko's motion for a new trial focuses almost exclusively on the evidence against her, namely the Postal Inspectors' warning to her about continuing to do business with Araya in April 2013.  [Dkt. 565 at 2-18; Dkt. 566 at 2-3.]  As with Araya's motion, Henderson's motion to adopt makes it difficult to tell what objection he has to this particular evidence.  If Henderson objects to it as inadmissible hearsay, the Court has already overruled that objection several times.  Nothing in Henderson's six-sentence motion persuades the Court that it should have ruled otherwise.  Furthermore, the Court properly limited Inspector Gonzalez's testimony for the jury, instructing them that it was to be used only against Defendant

Seko to help establish her state of mind, and not against any other defendant or for the truth of the matters asserted. Jury Instructions at 57 (Instruction 40: Evidence Admitted for a Limited Purpose Only). Moreover, the jury was given at least three reminders about considering the evidence against each defendant separately. *See* Jury Instructions at 12 (Instruction 9: Give Each Defendant Separate Consideration), 54 (Instruction 38: Statement of One Defendant in a Multi-Defendant Trial, and 75 (Instruction 52: Verdict – Multiple Defendants – Multiple Counts). Accordingly, the Court finds no legitimate basis for disturbing the jury's verdict based upon Inspector Gonzalez's testimony.

In addition, Defendant Seko raises—and Defendant Henderson now adopts—four additional grounds for a new trial: (1) the indictment shown to the jury included the grand jury foreperson's signature; (2) the Court refused to instruct the jury that the phrase, "We have been trying to reach you without success," was immaterial; (3) the Government should not have been permitted to introduce evidence about Henderson's failure to file his tax returns; and (4) the Court improperly admitted Government exhibits from the 34-series, which included documents seized at Defendant Seko's business in June 2014. It is difficult to discern how some of this evidence relates to Henderson's convictions, especially given that his six-sentence motion provides no details. Consequently, and for the same reasons set

6

forth in the Court's Memorandum Opinion accompanying Seko's motion, the Court finds no legitimate basis for granting Defendant Henderson a new trial on these four grounds.

Finally, Defendant Henderson's Second Motion for a New Trial [Dkt. 575] objects to the Court's use of a deliberate ignorance jury instruction. Henderson first argues that this instruction was overly broad and invited too much juror speculation. [*Id.* at 1.] The remainder of Henderson's motion focuses on the lack of evidence to establish his own deliberate ignorance. [*Id.* at 1-3.] Specifically, while relying on cases from the Fifth and Ninth Circuits, Henderson contends that the Court erred by using this instruction because "the record is devoid of any evidence that defendant Henderson deliberately took steps to avoid actual knowledge of facts."[1] [*Id.* at 4.]

The jury instruction to which Henderson now objects states, in full, as follows:

> The government may prove that a defendant acted "knowingly" by proving, beyond a reasonable doubt, that a defendant deliberately closed his or her eyes to what would otherwise have been obvious. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. A finding beyond a reasonable doubt of a defendant's intent to avoid knowledge or enlightenment would permit the jury to find knowledge. Stated another way, a person's knowledge of a particular fact may be shown from a deliberate or intentional ignorance or

---

[1] Contrary to Henderson's claim, "[t]he record need not contain direct evidence . . . that the defendant deliberately avoided knowledge of wrongdoing; all that is necessary is evidence from which the jury could infer deliberate avoidance of knowledge." *United States v. Stone*, 85 F. App'x 925, 934 (4th Cir. 2004) (quoting *United States v. Whittington*, 26 F.3d 456, 463 (4th Cir. 1994)).

> deliberate or intentional blindness to the existence of that fact.
>
> It is, of course, entirely up to you as to whether you find any deliberate ignorance or deliberate closing of the eyes and any inferences to be drawn from any such evidence.
>
> You may not conclude that a defendant had knowledge, however, from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition.

*See* Jury Instructions at 53 (Instruction 37: Deliberate Ignorance – Explained). As pointed out by the Government, this instruction is consistent with blackletter and Fourth Circuit law. *See* 1A O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions* § 17:09 (6th ed. updated Aug. 2015); *United States v. Ruhe*, 191 F.3d 376, 384-85 (4th Cir. 1999); *United States v. Guay*, 108 F.3d 545, 551 (4th Cir. 1997); *United States v. Abbas*, 74 F.3d 506, 513-14 (4th Cir. 1996). Despite claiming that this instruction was overly broad, Henderson has identified no specific errors in the chosen language. Moreover, he failed to object to the instruction as written during the charge conference, objecting instead only to its application as to him. Accordingly, the Court denies Henderson's request for a new trial based on his allegation that the Court's willful blindness instruction was too broad.

The remainder of Henderson's argument is that the Government produced insufficient evidence to support the use of a deliberate ignorance instruction against him. However, "the evidence support[ed] both actual knowledge on the part of the

defendant and deliberate ignorance, [so] a willful blindness instruction [wa]s proper." *Ruhe*, 191 F.3d at 384 (citing *Abbas*, 74 F.3d at 513).

During closing arguments at trial, Henderson's defense was clear: he was either too stupid to understand the illegal scheme, or not aware of the illegality of his and his co-conspirators' actions. As the Government points out, the essence of this argument is that Henderson did not know the victims were being defrauded because he did not know that their payments never made it to their lenders. Opp. at 7. Having asserted this defense, combined with the evidence admitted at trial, the need to instruct the jury about willful blindness was obvious.

As pointed out above, Henderson was responsible for opening retail mailboxes to receive victim funds. *See, e.g.*, Gov't Exhs. 45-1, 55-1, 57-2, 59-1, 87-3, 87-4. He also opened bank accounts into and from which he deposited and withdrew those funds, frequently in cash. *See, e.g.*, Gov't Exhs. 118-1, 118-2, 124-2 through 124-5, 125-1, 125-2, 125-4 through 125-6, 126-1 through 126-4, 128-1, 128-2, 128-4, 128-7, 128-11, 128-21, 129-1 through 129-3, 403-1, 403-2, 404-1, 404-2, 405-1, 405-2, 406-1, 406-3, 407-1, 407-2, 408-1, 409-1. Moreover, Henderson personally retrieved victim funds that were sent through MoneyGram. *See* Gov't Exhs. 114-1, 114-2, 114-3, 115-1. On one occasion, Henderson deposited a check with the memo line "loan mod" and then

withdrew approximately the same amount in cash immediately thereafter.  *See* Gov't Exh. 125-5.  On another, a Chase Bank employee testified that she warned Henderson that a victim had complained about paying money into one of his bank accounts for services that were never rendered.  *See* Gov't Exh. 128-19.  Estilow, one of his co-conspirators, also testified that he had observed Henderson disbursing the scheme's proceeds to Araya.  Despite having access and control over all of these victim funds, not a single piece of evidence at trial suggested that Henderson, or anyone else, ever wrote a check to a mortgage lender.  The evidence was therefore more than sufficient for the jury to infer that Henderson deliberately avoided knowledge about his obvious involvement in a fraudulent scheme.  Accordingly, the Court's use of the deliberate ignorance instruction was not in error.  No new trial will be granted on that basis.

### III.  Conclusion

For the foregoing reasons, the Court will deny Defendant's motion for a judgment of acquittal.  The Court will also deny Henderson's motion for a new trial.

An appropriate Order will issue.

|  |  |
|---|---|
| May 30, 2017<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |